# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:24-cv-00034-MR-WCM

| | | |
|---|---|---|
| ANDREW D. ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| THE STATE OF NORTH CAROLINA, | ) | |
| THE OFFICE OF THE GOVERNOR OF | ) | |
| NORTH CAROLINA, ROY COOPER, | ) | |
| III, THE OFFICE OF THE NORTH | ) | |
| CAROLINA SUPREME COURT CHIEF | ) | |
| JUSTICE, CHERI BEASLEY, PAUL | ) | |
| NEWBY, NORTH CAROLINA | ) | |
| SUPERIOR COURT DISTRICT 30, | ) | |
| BRADLEY B. LETTS, NORTH | ) | |
| CAROLINA DISTRICT COURT, ROY T. | ) | |
| WIJEWICKRAMA, KRISTINA L. | ) | |
| EARWOOD, KALEB D. WINGATE, | ) | |
| DONA F. FORGA, JOHN J. PAVEY, | ) | |
| JR., JARED R. DAVIS, THE OFFICE | ) | |
| OF THE ATTORNEY GENERAL OF | ) | |
| NORTH CAROLINA, JOSHUA STEIN, | ) | |
| THE 43RD PROSECUTORIAL | ) | |
| DISTRICT, THE OFFICE OF THE | ) | |
| DISTRICT ATTORNEY, ASHLEY H. | ) | |
| WELCH, CHRISTINA B. MATHESON, | ) | |
| ANDREW C. BUCKNER, JACOB P. | ) | |
| PHELPS, JENNACA D. HUGHS, | ) | |
| SUMER L. ALLEN, JACKSON | ) | |
| COUNTY NORTH CAROLINA, | ) | |
| JACKSON COUNTY SHERIFF'S | ) | |
| DEPARTMENT, THE OFFICE OF THE | ) | |
| SHERIFF, CHIP L. HALL, CNA | ) | |
| SURETY, HEATHER BAKER, | ) | |

SHANNON H. QUEEN, ANN D. )
MELTON, THE OFFICE OF THE )
JACKSON COUNTY CLERK OF )
SUPERIOR COURT, THE OFFICE OF )
THE JACKSON COUNTY )
MAGISTRATE, JEFFERY W. )
POWELL, SAMUEL K. BOWERS, )
TYLER B. BRYSON, DEREK A. )
ROBINSON, MEGAN L. RHINEHART, )
KATHLEEN D. BREEDLOVE, )
SOUTHWESTERN COMMUNITY )
COLLEGE, LYNN P. DANN, CHERYL )
L. CONTINO-CONNER, BARBARA B. )
PUTMAN, THOMAS R. BROOKS, )
JOHN DOES 1-99, and JANE DOES )
1-99, )
)
            **Defendants.** )
_____ )

THIS MATTER is before the Court on initial review of the Plaintiff's Complaint as Amended [Docs. 1, 4]. See 28 U.S.C. § 1915(e)(2). Also before the Court is the Plaintiff's Motion to Process *In Forma Pauperis* [Doc. 3].

## I.     BACKGROUND

On February 2, 2024, the *pro se* Plaintiff Andrew D. Anderson ("Plaintiff") filed this action against Defendants the State of North Carolina; the Office of the Governor of North Carolina; Roy Cooper, III, an individual, and Governor of North Carolina; the Office of the North Carolina Supreme Court Chief Justice; Cheri Beasley, an individual, and former Chief Justice

of the North Carolina Supreme Court; Paul Newby, an individual, and Chief Justice of the North Carolina Supreme Court; North Carolina Superior Court District 30; Bradley B. Letts, an individual, and Senior Resident Superior Court Judge 30B; North Carolina District Court; Roy T. Wijewickrama, an individual, and Chief District Court Judge, 30th District; Kristina L. Earwood, an individual, and 30th District Court Judge; Kaleb D. Wingate, an individual, and 30th District Court Judge; Dona F. Forga, an individual, and 30th District Court Judge; John J. Pavey, Jr., an individual and Court-appointed counsel; Jared R. Davis, an individual, and Court-appointed counsel; the Office of the Attorney General of North Carolina; Joshua Stein, an individual, and Attorney General of North Carolina; the 43rd Prosecutorial District; the Office of the District Attorney; Ashley H. Welch, an individual, and 43rd Prosecutorial District Attorney; Christina B. Matheson, an individual, and Assistant District Attorney for the 43rd Prosecutorial District; Andrew C. Buckner, an individual, and Assistant District Attorney for the 43rd Prosecutorial District; Jacob P. Phelps, an individual, and Assistant District Attorney for the 43rd Prosecutorial District; Jennaca D. Hughs, an individual, and Assistant District Attorney for the 43rd Prosecutorial District; Summer L. Allen, an individual, and Paralegal for the 43rd Prosecutorial District; Jackson County North Carolina; Jackson County Sheriff's Department; the Office of the Sheriff;

Chip L. Hall, an individual, and retired Jackson Co. Sheriff; CNA Surety, of Sioux Falls, SD, Small Commercial Service Center; Heather Baker, an individual, and former Jackson Co. Attorney; Shannon H. Queen, an individual, and former top-ranking officer with the Jackson Co. Sheriffs Dept.; Ann D. Melton, an individual and former Jackson Co. Clerk of Superior; the Office of the Jackson County Clerk of Superior Court; the Office of the Jackson County Magistrate; Jeffery W. Powell, an individual, Former Jackson Co. Magistrate and Deputy Magistrate; Samuel K. Bowers, an individual, and former Jackson Co. Sheriff's Deputy Courthouse Security; Tyler B. Bryson, an individual, and current Jackson Co. Sheriff's Deputy and Courthouse Security; Derek A. Robinson, an individual, and Former Jackson Co. Sheriff's Deputy and Courthouse Security; Megan L. Rhinehart, an individual and Current Jackson Co. Sheriff's Deputy; Kathleen D. Breedlove, an individual, retired Director of Human Resources from Southwestern Community College and currently the Director of HR for Jackson Co.; Southwestern Community College; Lynn P. Dann, an individual, and former Department Head, Psychology, Sociology, and Ethics Instructor at Southwestern Community College; Cheryl L. Contino-Conner, an individual, and former Dean of Students at Southwestern Community College; Barbara B. Putman, an individual, and former Dean of Arts & Sciences at

Southwestern Community College; Thomas R. Brooks, an individual, and President of Southwestern Community College; John Does 1-99; and Jane Does 1-99. [Doc. 1].

In his 79-page Complaint, with over 200 pages of exhibits, the Plaintiff brings numerous federal and state law claims, including federal constitutional claims pursuant to 28 U.S.C. §§ 1981, 1983, and 1985 for violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendment rights; claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; "[l]everaging malfeasance under color-of-law to levy administrative terrorism, economic and psychological warfare," state law constitutional claims under Article I, Sections 1, 2, 3, 6, 7, 12, 13, 14, 18, 19, 21, 23, 24, 27, 35, 36, and 37 of the North Carolina Constitution; as well as state law claims for intentional torts, negligence, "breaches of public trust," and promissory estoppel. [Doc. 1].

The Plaintiff's prayer for relief spans more than two full pages of his Complaint and includes "declaratory statements," damages, injunctive relief, "ordering the governments to maintain their statutory obligation to Plaintiff's rights," "declaratory relief that emergency powers do not exist, and that North Carolina's Governor Roy Cooper's abuses of emergency declarations are not powers vested in him by God nor with the consent of the governed," an

"order relieving the Jackson Co. Sheriff's Dept of the frivolous duty to guard the main entrance and scan every individual entering," four years of the Plaintiff's lost earnings, special damages in the form of "0.1% of North Carolina's state and local direct general expenditures" of $93.7 million, treble damages, attorneys' fees and court costs, and post-judgment interest. [Id.].

On February 29, 2024, the Plaintiff filed an Amended Complaint with an updated request for relief and submitted additional exhibits via CD Drive. [Doc. 4]. Specifically, the Plaintiff removed his request for pre-judgment injunctive relief, but the particular requests remain largely the same. [Id.]. It appears that this is a piecemeal amendment, as the Plaintiff references exhibits filed with the original complaint and includes them in his exhibit index but did not reattach them to the Amended Complaint.

While at times difficult to follow, the Plaintiff's allegations appear to arise from several different incidents, some of which are seemingly unrelated. Given the volume of the alleged facts contained in the Complaint and its accompanying exhibits, the Court will summarize some of the alleged facts here and will refer to others as necessary throughout its analysis.

One alleged incident arose out of the Plaintiff's participation in an ethics course at Southwestern Community College ("SCC"), where his professor, Defendant Dann, removed a post that the Plaintiff made on the

class online forum because Dann considered it disrespectful. [Doc. 1-2 at 185]. The Plaintiff complained to multiple other officials at SCC, including Defendants Contino-Connor, Putman, and Brooks. [Id. at 186-87]. The Plaintiff alleges that Defendant Dann gave him poor grades in his class in retaliation for him exercising his free speech rights, and that Defendants Dann, Contino-Connor, Putman, and Brooks violated his First Amendment rights by censoring him. [Id. at 187; Doc. 1 at 18-21].

In a separate incident, the Plaintiff was charged with trespass, failure to appear on misdemeanor, resisting a public officer, and violation of a court order. [Id. at 101, 104, 106]. These charges apparently arose from the Plaintiff refusing to wear a face mask, and instead wearing a toy football helmet, when visiting the Jackson County Courthouse. [Id. at 190-91]. It appears that the Plaintiff pled guilty to the trespass charge in exchange for the dismissal of his other charges, but he also alleges that he was found guilty of trespass at a trial presided over by Defendant Judge Forga.[1] [Id. at 124-26, 194]. The Plaintiff also describes a physical altercation with Defendants Bryson and Bowers at the courthouse that apparently resulted in his arrest, but the Plaintiff also describes being arrested the next day. [Id. at 197-98].

---

[1] Complete state court records have not been provided by the Plaintiff.

The Plaintiff alleges that there was at least one other incident at the Jackson County Courthouse where he refused to "don the court-ordered mandatory face diaper," and was refused access to the clerk's office by Defendant Robinson. [Id. at 195]. The Plaintiff further alleges that Defendant Bryson harassed him on multiple occasions "about wearing a face mask which is unlawful, to begin with." [Id. at 196].

From the exhibits attached to the Plaintiff's Complaint, it appears that the Plaintiff filed a previous civil case in state court against Defendants Dann, Breedlove, Contino-Connor, Brooks, Putman, Southwestern Community College, and several Jane Does and John Does. [Doc. 1-2 at 82-84, 91]. Although the Plaintiff does not specify what the claims in this previous case were, from the records provided, it appears that the case was dismissed by Judge Pope and the Plaintiff's appeal was dismissed by Defendant Judge Letts. [Id.]. Although Judge Pope is not named as a Defendant in this case, the Plaintiff claims that because of Judge Pope's order for Rule 11 sanctions for frivolously filing a second civil suit, he was "reduced to liquidating private property, 260 ounces of .999 fine silver bullion to raise funds to cover" his sanctions." [Id. at 195].

## II.    STANDARD OF REVIEW

Because the Plaintiff, who is proceeding *pro se*, seeks to proceed *in forma pauperis*, the Court must examine the pleadings to determine whether this Court has jurisdiction and to ensure that the action is not frivolous or malicious and states a claim upon which relief can be granted.   See 28 U.S.C. § 1915(e)(2)(B)(i) and (ii); see also Michau v. Charleston Cnty., 434 F.3d 725, 728 (4th Cir. 2006) (noting that § 1915(e) "governs IFP filings in addition to complaints filed by prisoners").   A complaint is deemed frivolous "where it lacks an arguable basis either in law or in fact."   Neitzke v. Williams, 490 U.S. 319, 325 (1989).   The Fourth Circuit has offered the following guidance to a court tasked with determining whether a complaint is frivolous under § 1915(e):

> The district court need not look beyond the complaint's allegations in making such a determination.   It must, however, hold the *pro se* complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally.   Trial courts, however, are granted broad discretion in determining whether a suit is frivolous or malicious.

White v. White, 886 F.2d 721, 722-23 (4th Cir. 1989).   While the complaint must be construed liberally, the Court may "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless," including such claims that describe "fantastic or delusional scenarios." Neitzke, 490 U.S. at 327, 328.

Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2). A complaint fails to state a claim where it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)).

## III. DISCUSSION

### A. Sovereign Immunity

The Plaintiff purports to name the State of North Carolina as a Defendant. The Eleventh Amendment deprives federal courts of any jurisdiction to hear state law claims by private parties against states. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104-106 (1984). The Eleventh Amendment applies with its full sweep to bar any relief, whether legal or equitable. Id. at 106. The bar includes pendent state law

claims as well as all federal claims, except in those cases where Congress has expressly abrogated the states' Eleventh Amendment rights. See Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1138 (4th Cir. 1990). A state may waive the protection of the Eleventh Amendment by state statute or state constitutional provision. Edelman v. Jordan, 415 U.S. 651, 673-74 (1974). Any such waiver, however, must be clearly and unequivocally expressed.

Because Congress has not abrogated the states' immunity in any of the types of claims brought by the Plaintiff, and the State has not waived its immunity, the Plaintiff's claim against the State of North Carolina is dismissed with prejudice. Furthermore, sovereign immunity also extends to state agencies and departments. Halderman, 465 U.S. at 101-02. As such, the Plaintiff may not proceed with any of his claims against Defendants "Office of the Governor of North Carolina," Roy Cooper, III, "North Carolina Superior Court District 30," "North Carolina District Court," "Office of the Attorney General of North Carolina," Joshua Stein, or "Office of the Sheriff."

### B. Judicial and Prosecutorial Immunity

The Plaintiff names as Defendants several judges, including Justices of the North Carolina Supreme Court and Superior Court and District Court Judges of Jackson County. [Doc. 1]. Judges are immune from suit under

the doctrine of judicial immunity.  See Stump v. Sparkman, 435 U.S. 349, 359 (1996) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); Imbler v. Pachtman, 424 U.S. 409, 419 (1976) (stating that judicial "immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences") (internal quotations omitted).

Accordingly, the Plaintiff's claims against former Chief Justice Beasley, Chief Justice Newby, and Judges Letts, Wijewickrama, Earwood, Wingate, Forga, and Powell are barred by judicial immunity and are therefore dismissed with prejudice.  See, e.g., Galloway v. Davis, No. 23-1386, 2023 WL 4105708 (4th Cir. June 21, 2023) (affirming dismissal with prejudice of a Bivens action under § 1915(e)(2) as barred by judicial immunity); Mills v. Marchant, No. 8:19-cv-1512-TMC-JDA, 2019 WL 2647600, at *2-3 (D.S.C. June 4, 2019), adopted, 2019 WL 2644216 (D.S.C. June 27, 2019) (noting that dismissal with prejudice is proper under 28 U.S.C. § 1915 where claims against a judge are barred by the doctrine of judicial immunity and therefore

frivolous).  The same goes for Defendants "Office of the North Carolina Supreme Court Chief Justice" and "Office of the Jackson County Magistrate."

Judicial immunity also extends to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved.  Wiley v. Buncombe County, 846 F.Supp.2d 480, 485 (W.D.N.C. Mar. 2, 2012) (citations omitted).  Clerks of court, therefore, have been ruled immune from suit under § 1983 when performing "quasi-judicial" duties.  Id. "The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.'"  Id. (quoting Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992)).  As such, the Plaintiff's claims against Defendants Melton and "Office of the Jackson County Clerk of Superior Court" are barred by judicial immunity as well.

Prosecutors are also immune from suit under the doctrine of prosecutorial immunity.  Imbler, 424 U.S. at 419.  Therefore, the Plaintiffs claims against Defendants Welch, Matheson, Buckner, Phelps, Hughs, "43rd Prosecutorial District," and "Office of the District Attorney" must be dismissed on this basis alone.

## C.   Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### 1.   Claims Challenging State Court Convictions

To the extent he aims to do so, the Plaintiff may not bring a § 1983 claim challenging the validity of his state court convictions. Heck v. Humphrey, 512 U.S. 477, 487 (1994). "Heck v. Humphrey bars a § 1983 action if it is clear from the record that its successful prosecution would necessarily imply that the plaintiff's earlier conviction was invalid. The Heck analysis requires a close factual examination of the underlying conviction." Riddick v. Lott, 202 F. App'x 615, 616 (4th Cir. 2006). Again, it is not entirely clear what the Plaintiff is alleging in regard to his state court criminal proceedings, but he does appear in part to be seeking expungement of his convictions. [Doc. 1 at 76]. Any such claim is barred under Heck and must be dismissed.

### 2.   Claims Against Private Party Defendants

The Court next turns to the private parties that the Plaintiff names as defendants.

[T]he Fourth Circuit has recognized four exclusive circumstances under which a private party can be deemed to be a state actor [under § 1983]. These are: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state.

Davison v. Facebook, Inc., 370 F. Supp. 3d 621, 628 (E.D. Va.), aff'd, 774 F. App'x 162 (4th Cir. 2019) (internal citations and quotations omitted).

With regard to the private parties named as Defendants in this case, the Plaintiff has not alleged any of the circumstances that would compel the Court to treat those Defendants as state actors. Therefore, all § 1983 claims against Defendants CNA Surety, Heather Baker, John J. Pavey, Jr., and Jared R. Davis cannot go forward.

### 3. Claims Pursuant to Monell

The Court next turns to the remaining Defendants: Jackson County, Jackson County Sheriff's Department, multiple current and former Sherriff's Deputies, Summer Allen, SCC, and several employees of SCC.[2] Suits

---

[2] For purposes of initial review, the Court will assume that SCC and its employees are state actors subject to suit under § 1983. See Tann v. Ludwikoski, 393 F. App'x 51, 53

against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978)). The Jackson County Sheriff's Department, for example, is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21 (1992) (quoting Monell, 436 U.S. at 691). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694).

The Plaintiff has not alleged any policy or custom, as Monell requires, that plausibly states a constitutional violation against any of the Defendants in their official capacities. On the contrary, the Plaintiff relies on broad legal conclusions that his rights were violated without providing adequate factual

---

(4th Cir. 2010) ("We conclude that [defendants], as employees of a state public educational institution created by state law, are state actors.").

allegations in support of his claims.  Therefore, the Plaintiff's § 1983 claims against Defendants Jackson County North Carolina, the Jackson County Sheriff's Department and SCC will be dismissed in their entirety.  The Plaintiff's claims against Defendants Allen, Hall, Queen, Bowers, Bryson, Robinson, Rhinehart, Breedlove, Dann, Contino-Conner, Putman, and Brooks in their official capacities are also accordingly dismissed.

### 4.    Claims Against Individual Defendants

The Court next looks to the Plaintiff's constitutional claims against the remaining Defendants in their individual capacities.

### a.    Defendant Allen

Beginning with Defendant Allen, the Plaintiff appears to state no claim against her and instead has only submitted an email communication on which she was copied.  [Doc. 1-2 at 92].  Therefore, Defendant Allen will be dismissed as a Defendant.

### b.    Defendant Hall

The Plaintiff alleges that Defendant Hall refused to comply with the Plaintiff's request pursuant to the Freedom of Information Act ("FOIA") and "conspired to obstruct justice and tampered with evidence to produce the discovery that withheld the exculpatory or Brady material," but provides no

further allegations of fact that state a plausible constitutional claim. Therefore, any § 1983 claims against Defendant Hall will be dismissed.

### c. Defendants Bowers and Bryson

The Plaintiff additionally alleges claims of excessive force against Defendants Bowers and Bryson. "Whether an officer has used excessive force is judged by a standard of objective reasonableness." Stanton v. Elliott, 25 F.4th 227, 233 (2022) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)). Moreover, "recognizing that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—we take care to consider the facts from the perspective of a reasonable officer on the scene and avoid judging the officer's conduct with the 20/20 vision of hindsight." Id.; Stanton, 25 F.4th at 233 ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment.").

The Plaintiff alleges the following with regard to his excessive force claim against Defendants Bowers and Bryson:

> Under color of state law, [Defendant] Bryson then grabbed the [P]laintiff by one arm and put it behind his back in a bent arm bar maneuver, and with [Defendant] Bryson's other hand, grabbed the [P]laintiff by the opposing side of his jacket and forced the [P]laintiff out of the courtroom where the [P]laintiff, was summoned to appear absent of all jurisdictions in Superior Court. Plaintiff Anderson

alleges the deputies never stated or even surmised that the [P]laintiff was under arrest at any point, where the [P]laintiff alleges he would have readily surrendered. Plaintiff Anderson alleges Defendants then proceeded to exit the court to the right and not to the [left][3] (which was the direction of the jail). Thus, Plaintiff Anderson alleges he [feared for his life][4] and that they were about to throw him down the stairs and simply claim the [P]laintiff was resisting arrest, it was an accident; whoops, he should not have resisted arrest, so before they·all ([P]laintiff and three[5] deputies) could make it to the stairs, with the [P]laintiffs [*sic*] one free hand grabbed the center frame door pole of a double-door walkway to the staircase and would not let go. The deputies tried to get Plaintiff Anderson's hand loose for several seconds but were unsuccessful. In Deputy Bryson's frustration, he shouted at the [P]laintiff, "DO YOU WANT TO GO TO JAIL?!" Plaintiff Anderson alleges he answered, "YES!!!" Plaintiff Anderson further alleges Defendant Deputy Bryson immediately attempted multiple times to suplex or body slam Plaintiff Anderson over the [D]efendant's left shoulder simultaneously; Deputy Bowers attempted to break loose the [P]laintiff's one-handed death grip on the center pole of the double door. If Defendants, Deputy Bowers and Deputy Bryson, had succeeded in their attempts to suplex Plaintiff Anderson, alleges [*sic*] the [D]efendants attempted murder and intended to slam Plaintiff Anderson's head hard on the hard marble/concrete floor, resulting in his potential death or severe maiming by the deputies; Plaintiff alleges rather than allowing the [D]efendants

---

[3] Alteration in original.

[4] Alteration in original.

[5] It is unclear from the Plaintiff's Complaint as to who he alleges the third deputy to be; only Defendants Bowers and Bryson are named in this part of the Plaintiff's allegations.

> to have their way, Plaintiff Anderson planned his fall
> to mitigate serious injuries.

[Doc. 1 at 45-46]. The Plaintiff admits, he had already failed to appear as summoned and then fled from the Defendants once he saw them. The Plaintiff further admits that he resisted arrest when the Defendants tried to handcuff him. Judging the allegations by a standard of objective reasonableness, the Plaintiff fails to plausibly assert any claim, but merely alleges that the Defendants used only as much force as was necessary, which force was reasonably calculated to detain and arrest the Plaintiff, who was resisting arrest.[6] Therefore, even accepting these allegations as true and taking them in the light most favorable to the Plaintiff, he has not alleged a plausible excessive force claim against Defendants Bowers and Bryson.

### d. Defendant Robinson

The Plaintiff additionally alleges that Defendant Robinson asked him to leave the Jackson County courthouse because the Plaintiff refused to wear a face mask and arrested the Plaintiff for trespass. [Doc. 1-2 at 192]. These allegations fail to state any claim of a violation of the Plaintiff's constitutional rights; it appears instead that the Defendant lawfully arrested

---

[6] Even if the Plaintiff had stated a viable claim for excessive force, such a claim would almost certainly be barred by the doctrine of qualified immunity, as the Plaintiff has not alleged the violation of a clearly established right. See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

the Plaintiff for failing to comply with a lawful command to leave the premises. This claim will accordingly be dismissed.

### e. Defendants Rhinehart and Breedlove

In his claims against Defendants Rhinehart and Breedlove, the Plaintiff alleges that both Defendants coerced him into not filing complaints with the court. What can best be surmised from the Plaintiff's allegations is that these Defendants went to the Plaintiff's residence to serve him with a civil restraining order and summonses for his felony charges. [Doc. 1-2 at 188]. On these facts, the Plaintiff has not stated any viable claim that his constitutional rights were violated.

### f. Defendants Dann, Contino-Connor, Putman, and Brooks

The Plaintiff also claims that Defendants Dann, Contino-Connor, Putman, and Brooks violated his First Amendment rights by censoring his free speech and retaliating against him for exercising his free speech rights in the context of his participation in a community college course. "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). "But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork

or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." Id. at 513.

The facts alleged by the Plaintiff show that he posted a disruptive and disrespectful comment making a series of jokes about Confucius. [Doc. 1-2 at 18]. Defendant Dann, the instructor for the course, removed the Plaintiff's post and explained to the Plaintiff that he did so "because of the offense it would cause to followers [of Confucius], and disrespect to their personal beliefs." [Id.]. Dann also explained that he would not permit such comments to be made about other religious figures, like Jesus or Muhammed, and he "can't treat Confucius any differently." [Id.]. It appears from these facts that Defendant Dann, and subsequently Defendants Contino-Connor, Putman, and Brooks, acted precisely in accord with Tinker by prohibiting a particular expression of opinion because of its potential "substantial disruption of or material interference with school activities." Tinker, 393 U.S. at 514. Indeed, Dann explained that he was concerned precisely with the "invasion of rights of others," in this case, followers of Confucius. [Id. at 513].

The Court turns next to the Plaintiff's claim of retaliation under the First Amendment. "In order to state a colorable retaliation claim under Section 1983, a plaintiff 'must allege that (1) he engaged in protected First

Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 249 (4th Cir. 2017) (quoting <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 499 (4th Cir. 2005)) (alterations omitted). The Plaintiff alleges that the SCC employees named as Defendants retaliated against him by giving him a zero on his final paper. [Doc. 1 at 77]. However, records provided by the Plaintiff himself do not support this allegation. Defendant Dann's comments in response to Plaintiff's final paper instead indicate that the Plaintiff did not answer any of the questions asked in the assignment using ethical theories, as instructed. [Doc. 1-2 at 23]. There is no indication that the Defendant's decision to give the Plaintiff a low grade was in any way related to the content of his speech but was instead genuinely based on his deficient performance on the assignment. Therefore, the Plaintiff has failed to state a plausible retaliation claim against Defendants Dann, Contino-Connor, Putman, or Brooks.

The Court further notes that documents provided by the Plaintiff indicate that the Plaintiff has already brought civil claims against these Defendants in state court, and that those claims were dismissed, further

suggesting their lack of viability.[7]  [Doc. 1-2 at 82-84, 91].  For all of the foregoing reasons, the Plaintiffs have not alleged a plausible First Amendment claim against these Defendants, and these claims will be dismissed.

### g.  Doe Defendants

Finally, the Plaintiff names as Defendants John Does 1-99 and Jane Does 1-9, but provides no further information about who these Defendants are or what claims the Plaintiff is bringing against them.  As such, these Defendants will be dismissed.

### D.  Section 1981 Claims

Pursuant to 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The statute also guarantees equal treatment in "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id. § 1981(b).  To establish a Section 1981 claim, the plaintiff must show that (1) he is a member of a racial minority; (2) the defendant had an intent to

---

[7] While the full details of such claims were not provided to the Court, any claims that were dismissed in state court with prejudice that the Plaintiff attempts to relitigate in this Court are barred by res judicata.

discriminate based on race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  Bobbitt by Bobbitt v. Rage Inc., 19 F. Supp. 2d 512, 517 (W.D.N.C. 1998) (quoting Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (7th Cir. 1997)).

The Plaintiff has not alleged that he is a racial minority, nor that any of the Defendant's had any racially discriminatory intent.   Therefore, the Plaintiff's § 1981 claims will be dismissed in their entirety.

### E.    Section 1985 Claims

The Fourth Circuit has explained that "to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under § 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)); see also Bhattacharya v. Murray, 515 F. Supp. 3d 436, 463 (W.D. Va. 2021).   Courts "have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory

manner, in the absence of concrete supporting facts." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons, 47 F.3d at 1376); see also Womack v. Paragon Systems, No. 3:17-cv-00667-FDW, 2018 WL 2418557, at *4 (W.D.N.C. May 29, 2018) ("Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed.").

Here, Plaintiff has made only conclusory allegations regarding a purported conspiracy and has not made any allegation regarding discriminatory animus. Therefore, all of his § 1985 claims will be dismissed.

## F. RICO Claims

The Racketeer Influenced and Corrupt Organizations Act "creates civil liability for those who engage in a pattern of racketeering activity." GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2011). Under 18 U.S.C. § 1964(c), "RICO contains a private right of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'" Chubirko v. Better Bus. Bureau of S. Piedmont, Inc., 763 F. Supp. 2d 759, 766 (W.D.N.C. 2011). RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal

activity." U.S. Airline Pilots Ass'n v. AWAPPA, LLC, 615 F.3d 312, 317 (4th Cir. 2010).

The elements of a RICO claim under 18 U.S.C. § 1962(c) are: (1) the conducting; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. See Whitney, Bradley, & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)). A "pattern of racketeering activity" is defined as at least two acts of racketeering, typically referred to as predicate acts. See 18 U.S.C. § 1961(5). To plead a conspiracy violation under § 1962(d), a plaintiff must allege that "each defendant agreed that another coconspirator would commit two or more acts of racketeering." Walters v. McMahen, 795 F. Supp. 2d 350, 355 (D. Md. 2011), aff'd in relevant part, 684 F.3d 435 (4th Cir. 2012). "[T]he person committing the racketeering acts must be separate from the 'enterprise' that the person participates in or conducts" and the plaintiff must show "that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Carter v. Rogers, Townsend & Thomas, P.C., No. 1:12cv495, 2014 (U.S. Dist. LEXIS 25622, at *14-15 (M.D.N.C. Feb. 28, 2014).

Here, the Complaint is devoid of any factual allegations as to who any of the Defendants conspired with, when this alleged agreement occurred,

where it occurred, how it occurred, or even the nature of the agreement. The Plaintiff instead appears to allege, as already described, a wide-ranging series of unrelated incidents, none of which indicate a violation of federal law on the part of any of the Defendants. Moreover, the Plaintiff's claims of conspiracy read as mere legal conclusions rather than factual allegations that support a plausible finding of any actual conspiracy.

In sum, the Plaintiff has failed to allege any violation of federal law, let alone any agreement or conspiracy on behalf of any of the Defendants to commit racketeering. The Plaintiff's allegations therefore fail to state a viable claim for relief under RICO.

## G.    Remaining State Law Claims

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims . . . derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily

dismiss[es] all related state claims." Artis v. Dist. Of Columbia, 583 U.S. 71, 71 (2018); see 28 U.S.C. § 1367(c)(3). A district court may also dismiss the related state claims if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; or (3) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1), (2), (4).

To the extent that the Plaintiff seeks relief under North Carolina law, the Court declines to exercise supplemental jurisdiction, as no federal claim has passed initial review. See Artis, 583 U.S. at 71; 28 U.S.C. § 1367(c)(3). Accordingly, the Plaintiff's state law claims are dismissed without prejudice.

## H. Motion to Proceed *In Forma Pauperis*

The Plaintiff seeks to proceed with this civil action without having to prepay the costs associated with prosecuting the matter. [Doc. 3]. Upon review of the Plaintiff's Application, the Court finds that the Plaintiff has sufficient resources from which to pay the filing fee required for this action. Accordingly, the Court finds that the application should be denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review and will dismiss his Complaint without prejudice. The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint.  Piecemeal amendment will not be permitted.  The Plaintiff is further cautioned against combining multiple causes of action against multiple defendants in one Complaint and should instead separate his unrelated causes of actions where appropriate.  Should the Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss and terminate this action.

Furthermore, litigants do not have an absolute and unconditional right of access to the courts in order to prosecute frivolous, successive, abusive, or vexatious actions.  See Demos v. Keating, 33 F. App'x 918, 920 (10th Cir. 2002); Tinker v. Hanks, 255 F.3d 444, 445 (7th Cir. 2002); In re Vincent, 105 F.3d 943, 945 (4th Cir. 1997).  District courts have inherent power to control the judicial process and to redress conduct which abuses that process. Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).

The Plaintiff is hereby informed that future frivolous filings will result in the imposition of a pre-filing review system. Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004); Vestal v. Clinton, 106 F.3d 553, 555 (4th Cir. 1997). If such a system is placed in effect, pleadings presented to the Court which are not made in good faith and which do not contain substance, will be summarily dismissed as frivolous. See Foley v. Fix, 106 F.3d 556, 558 (4th Cir. 1997). Thereafter, if such writings persist, the pre-filing system may be modified to include an injunction from filings. In re Martin–Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Complaint as Amended [Docs. 1, 4] fails initial review under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim for relief and shall be **DISMISSED WITHOUT PREJUDICE** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that the Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. **If Plaintiff fails to so amend his Complaint, the matter will be dismissed.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Proceed *In Forma Pauperis* [Doc. 3] is **DENIED.**

**IT IS FURTHER ORDERED** that the Plaintiff shall pay the required filing fee within thirty (30) days of entry of this Order.  **Failure to pay the required filing fee within thirty (30) days of the entry of this Order will result in the dismissal of this action.**

**IT IS SO ORDERED.**

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge